**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JEFFREY THOMPSON,                      :        CIVIL ACTION NO. **3:CV-11-0340**
                                       :
                Plaintiff              :        (Judge Nealon)
                                       :
        v.                             :        (Magistrate Judge Blewitt)
                                       :
SHIRLEY MOORE SMEAL, et al.,           :
                                       :
                Defendants             :

## REPORT AND RECOMMENDATION

### I. Background.

On February 22, 2011, Plaintiff, Jeffrey Thompson ("Plaintiff"), a *pro se* prisoner at the State Correctional Institute at Camp Hill ("SCI-Camp Hill"), filed this § 1983 civil rights action. Plaintiff alleged that Defendants, Shirley Moore Smeal, Acting Secretary of the Pennsylvania Department of Corrections, Andrea Priori Meintel, Director of Treatment Services for the Pennsylvania Department of Corrections ("DOC"), Reverend Ulli Klemm, Administrator for Religion and Volunteer Services for the Pennsylvania Department of Corrections (collectively, "Defendants"), violated his First Amendment free exercise of religion right and Fourteenth Amendment equal protection as well as the RLUIPA by failing to provide him with two Christian feasts, namely at Christmas and Easter. (Doc. 1). As relief, Plaintiff requested that the Court direct the "[PA DOC] to authorize two Christian feasts annually; Christmas and Easter." (*Id*., p. 4). Plaintiff also sought the costs of his law suit. Plaintiff did not make a demand for a jury trial on his Complaint. (*Id*., p. 1).

We granted Plaintiff's *in forma pauperis* motion and directed the United States Marshals Service to serve Plaintiff's Complaint on Defendants.  (Doc. 6).  On March 21, 2011, Defendants jointly filed an Answer to Plaintiff's Complaint.  (Doc. 9).  Defendants did not request a jury trial in their Answer.  (*Id*.).

On April 6, 2011, Plaintiff filed a 3-sentence Motion for Appointment of Counsel (Doc. 14).  On April 8, 2011, the Court denied Plaintiff's Motion for Appointment of Counsel.  (Doc. 16).

Subsequently, discovery commenced.  On April 21, 2011, Plaintiff served Interrogatories and Requests for Documents on Defendants.  Defendants responded to Plaintiff's discovery requests on May 11 and May 13, 2011.  On June 9, 2011, Plaintiff filed a 1-page Motion to Compel Discovery and a 2-page support brief with exhibits, *i.e.* a copy of his Request for Documents and Defendants' Response to his Interrogatories.  (Docs. 17 and 18).  On June 29, 2011, the Court issued an Order and denied Plaintiff's Motion to Compel.  (Doc. 23).

On June 29, 2011, Plaintiff filed a 2-paragraph Motion for the Appointment of Stenographer for Deposition and a 2-paragraph support brief.  (Docs. 21 and 22).  Plaintiff requested the Court to appoint a stenographer to transcribe his deposition of Defendant Reverend Klemm, and for the Court to pay for the stenographer and the transcript.  Plaintiff stated that he was indigent and *pro se*, and that he could not afford the cost of a stenographer to conduct his deposition.  Defendants filed their opposition brief on July 1, 2011.   (Doc. 24).

On July 22, 2011, we issued an Order and denied Plaintiff's Motion for the Appointment of Stenographer for Deposition (Doc. 21) to the extent that Plaintiff is requesting the Court to bear the costs or order the government to bear the costs of conducting his deposition.  (Doc. 26).

On August 10, 2011, Plaintiff filed a "Demand for Jury Trial" under Rule 38 and the Seventh Amendment.  (Doc. 28).   On August 11,2011, Defendants filed a Motion to Strike Plaintiff's Jury Trial Demand and a supporting brief.  (Docs. 29 and 30).  On August 18, 2011, Plaintiff filed his 3-sentence opposition brief.  (Doc. 31).  Defendants did not file a reply brief.  On September 6, 2011, we issued a Memorandum and Order granting Defendants' motion to strike Plaintiff's demand for a jury trial and further ordered Plaintiff's demand for a jury trial stricken. (Doc. 32).

On September 7, 2011, Plaintiff filed a motion for summary judgment.  **(Doc. 33).**  After the Court granted an extension of time to Defendants, on September 26, 2011, Defendants filed a cross motion for summary judgment, statement of material facts ("SMF") and exhibit in support. **(Docs.  38, 39, 41).**  On September 27, Defendants filed a brief in support of their cross motion for summary judgment and a brief in opposition to Plaintiff's motion for summary judgment.  (Docs. 41 & 42).  After the Court granted an extension of time to Plaintiff, on October 25, 2011, Plaintiff filed a reply brief in response to Defendants' brief in opposition to Plaintiff's motion for summary judgment and a brief in opposition to Defendants' cross motion for summary judgment.  (Docs. 48, 49).  Plaintiff did not file a statement of material facts in support of his motion for summary judgment. [1] (*See* Docket, *generally*).  Plaintiff did not file his response to Defendants' SMF as he was

_____

[1] Local Rule 56.1 of the United States District Court for the Middle District of Pennsylvania Rules of Court requires "[a] motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."

required to do.[2] On October 27, 2011, Defendants' filed a reply brief in response to Plaintiff's brief in opposition to Defendants' cross motion for summary judgment.  (Doc.  50).

The motion for summary judgment of the Plaintiff and the cross motion for summary judgment of the Defendants are ripe for disposition.  (Docs. 33 & 38).[3]

## II.  Motion for Summary Judgment Standard.

In *Allen v. Fletcher*, 2009 WL 1542767, *2 (M.D. Pa.), the Court outlined the applicable standard to apply when considering a summary judgment motion as follows:

> Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

> Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact;

---

[2]    Local Rule 56.1 of the United States District Court for the Middle District of Pennsylvania Rules of Court requires "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the forgoing paragraph, as to which it is contended that there exists a genuine issue to be tried."

[3]The undersigned has been assigned this case for pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson,* 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Material facts" are those which might affect the outcome of the suit.  *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

## III. Allegations of Plaintiff's Complaint.

Plaintiff avers that, as an inmate at SCI-Camp Hill, he submitted through the "Inmate Religious Accommodation Request Form" and subsequently, followed up with the grievance procedure, a request for two Christian feasts, Christmas and Easter.  (Doc. 1).  Plaintiff asserts that as a Catholic Christian he was able to sufficiently document through scripture, church doctrine and tradition that the feasts are legitimate and should be permitted.  Plaintiff avers that the failure of the

DOC to give him Christmas and Easter feasts this is a clear violation of his right to the free exercise of his religion.  (*Id.*).  He further avers that he has been discriminated against under the equal protection clause because other similarly situated inmates are allowed their tradition based religious feasts while he is denied his religious request which is supported through church doctrine, scripture and tradition.  (*Id.*).

Plaintiff asserted three claims (Paragraph 8) under 42 U.S.C. § 1983 against all DOC Defendants acting under color of state law.  (*Id.*).  In Count One, Plaintiff alleged a First Amendment violation of his right to free exercise of religion.  (*Id.* at ¶ 8).  In Count two Plaintiff alleged a Fourteenth Amendment violation.  Plaintiff further alleged that his constitutional rights were violated relative to the exercise of religious freedom and the violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C.   §§ 2000cc et seq.  (*Id.*).

As relief, Plaintiff sought the PA Department of Corrections "to authorize two (2) Christian feast annually; Christmas and Easter.  These feasts would follow the menus of other feasts with food provided by the Department (sic).  Any additional, approved, food items would be at the expense of the participating inmates.  As a Christian Community we would need prayer over said food, and separate from non-Christians, so as not to offend their beliefs.  Also, the Plaintiff requests reimbursement of the costs of this matter."  (*Id.* at ¶ 16).

Plaintiff correctly recognized (Doc. 1 at ¶ 8 ) that jurisdiction of this Court is pursuant to 28 U.S.C. § 1331 and his request for declaratory relief is authorized by 28 U.S.C. § 2201 and F.R.C.P. 57.

## IV. Statement of Material Facts.

We first consider the material facts with respect to Plaintiff's claims. (Doc. 39). As their sole argument in his summary judgment cross motion and supporting brief and brief in opposition to Plaintiff's motion for summary judgment, Defendant s assert that neither the RLUIPA nor the First Amendment or Fourteenth Amendment was violated by the corrections officials' denial of a religious accommodation request by Plaintiff. (Docs. 41 & 42). Defendants attached exhibits to their Motion to support their contention, namely, the Declaration of Reverend Ulrich Klemm. (Doc. 40, Exh. 12a). Also, as stated, Defendants filed their SMF (Doc. 39), as required by Local Rule 56.1, M.D. Pa., which supports their position that Plaintiff's constitutional rights were not violated. Plaintiff, as mentioned, failed to file his paragraph-by-paragraph response to Defendants' SMF as he was obliged to do and as he was aware he was required to file.[4] Also, as stated above, Plaintiff failed to file a statement of material facts in support of his motion for summary judgment as required. Plaintiff submitted his Inmate Religious Accommodation Request, denials, grievances and appeals submitted to the PA Department of Corrections and religious information on Easter and Christmas rituals as attachments. (Doc. 33, *See* attachments). Plaintiff did not submit any other evidence to support any of his claims. Defendants properly filed their SMF in support of their Summary Judgment Motion (Doc. 39), as required by Local Rule 56.1 of M.D. Pa., and their facts are all properly supported by evidence. As stated above, Plaintiff did not properly responded to Defendant's SMF as required by Local Rule 56.1, M.D. Pa. *See Cyrus v. Laino*, Civil No. 08-1085,

---

[4] The docket reveals that Plaintiff was provided a copy of the pertinent Local Rules of this Court. (Doc. 4).

M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michatavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers, 2008 WL 3540526 (M.D. Pa.); Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed).  Regardless of Plaintiff's failure to properly deny Defendants' statement of facts, we accept Defendants' statement of facts since they are all supported by their evidence.[5]  We also consider Plaintiff's attachments to his Motion. (Doc. 33).

Since Plaintiff has not responded to Defendants' statement of material facts and since we find Defendants' SMF supported by their citation to the record, we quote them below as follows:

> 1. Plaintiff is Jeffrey Thompson, an inmate incarcerated at the State Correctional Institute at Camp Hill, Pennsylvania ("SCI-Camp Hill"). (Complaint/Answer, ¶ 2).

> 2. Defendants are Shirley Moore-Smeal, Deputy Secretary, Pennsylvania Department of Corrections, Rev. Ulli Klemm, Administrator for Religion and Volunteer Services, Pennsylvania Department of Corrections; and Andrea Priori-Meintel, Director of Bureau Treatment Services, Pennsylvania Department of Corrections.  (Complaint/Answer, ¶¶ 4-6).

> 3.   In September 2009, plaintiff submitted an Inmate Religious Accommodation Request Form to Department of Corrections officials in which he requested that Christian inmates at SCI-Camp Hill be permitted

---

[5] Local Rule 56.1 of the United States District Court for the Middle District of Pennsylvania Rules of Court requires "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."

to congregate for special feasts at Christmas and Easter. (Klemm declaration, ¶¶ 7(sic)).

4.  In accordance with Department of Corrections Policy, the Religious Accommodation Review Committee ("RARC") met on December 22, 2009 to review plaintiff's Religious Accommodation Request along with approximately fifteen other inmate requests for religious accommodations. (Klemm declaration, ¶ 7).

5.  The RARC consisted of six senior Departmental staff and one representative from the Department's legal office. (Klemm declaration, ¶ 8).

6.  The RARC recommended to the Deputy Secretary of Corrections that the request for separate feasts for Christian inmates at Easter and Christmas should be denied.  It was felt by members of the RARC that, while it may be customary for members of the Christian faith to gather with others to celebrate these holidays and the food is usually served at these times, feasting is not part of the religious significance of these holy days and is not mandated by scripture, unlike feast days observed by other religious groups like Islam. (Klemm declaration, ¶ 9).

7.  In the opinion of the RARC, the words "Feast Day" in the Roman Catholic and some Protestant traditions are synonymous with the words "Holy Day."   Holy Days are days which are celebrated in commemoration of the sacred mysteries and events recorded in the history of the Christian faith.  Holy Days are observed by special worship services and often rest from work.  Easter "feast," is therefore, is properly understood as the Easter Holy Day, not a gorging of food.  There are hundreds of "feast" days, i.e. holy days, observed in the Catholic Church. (Klemm declaration, ¶ 10).

8. The Pennsylvania Department of Corrections accommodates Christian inmates with opportunities to observe holy days such as Easter and Christmas.  In addition, during the Christian season of Lent, Institutions are directed to make provisions for the observances of: a) Ash Wednesday, including imposition of ashes on the forehead, and special worship services for this day; b) Palm Sunday, including the distribution of palm branches or a piece of palm branch to those attending services; c) Holy Thursday special services planned by the Catholic and/or Protestant chaplains; and e) Easter Vigil/Easter special services planned by the Catholic and/or Protestant chaplains (Klemm declaration , ¶ 11).

9.  In addition, during the Christian Season of Advent, institutions are directed to make provisions for the observance of : a) Advent week 1, including the lighting of sacramental candles on an Advent wreath; b) Advent week 2, including the lighting of sacramental candles on an Advent wreath; c) Advent week 3, including the lighting of sacramental candles on an Advent wreath; d) Advent week 4, including the lighting of sacramental candles on an Advent wreath; e) Christmas Eve special worship services may be planned by the Catholic and/or Protestant chaplains; and f) Christmas Day Special worship services may be planned by the Catholic and/or Protestant chaplains; and f) Christmas Day Special worship services may be planned by the catholic/and/or Protestant chaplains.  (Klemm declaration , ¶ 12).

10.  On January 29, 2010, Deputy Secretary Moore-Smeal concurred with the recommendation of the RARC to deny plaintiff's (sic) Religious Accommodation Request and communicated the decision to relevant staff.  (Klemm declaration, ¶ 13).

(Doc. 39).

## V.  Discussion.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:

(1) that the conduct complained of was committed by a person acting under color of state law; and

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured

by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v.*

*Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *See McCain v. Episcopal Hosp.*, 350 Fed.Appx. at 604.

Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations

of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[6]  *See also*

*Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.); *Slater v.*

---

[6]  Plaintiff sufficiently alleges in his pleading that the DOC Defendants are state officials.

*Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa.)(citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa.)("only those who act under color of state law are liable to suit under section 1983."); *See also Wright v. Loftus*, Civil No. 09-1305, M.D. Pa., 11-20-09 Memorandum, pp. 4-5.

"In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

11

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.[7]

### 1. First Amendment and Equal Protection Claims

In both Plaintiff's and Defendants' Motions for Summary Judgment, the parties argue that each of their summary judgment motions should be granted based on the undisputed facts regarding the violations of Plaintiff's religious free exercise rights under the First and Fourteenth Amendments.

In *Thompson v. PA DOC,* 2007 WL 404056, *1-*2 (M.D. Pa. 2-1-07), the Court stated:

> The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. Amend. I. In *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court held that the First Amendment was incorporated by the Fourteenth Amendment and, thus, was applicable to the states.
> It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citations omitted). Constitutional rights, however, including the right to practice religion, may be reasonably restricted in order to facilitate valid penological objectives, such as deterrence of crime, rehabilitation of prisoners, and institutional security. *See Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Pell v. Procunier,* 417 U.S. 817,

---

[7]As stated above, it is well settled that personal liability under §1983 cannot be imposed upon a state official based on a theory of *respondeat superior.* *See Ascenzi v. Diaz,* 2007 WL 1031516, *3 (M.D. Pa.)("supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct")(citations omitted).

822-23, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Accordingly, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell,* 417 U.S. at 822.

In *Hennis v. Tedrow*, 2011 WL 1230337, *10 (W.D. Pa. 3-31-11), the Court stated:

> "The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *DeHart v. Horn,* 227 F.3d 47, 51 (3d Cir.2000); *see also Sutton v. Rasheed,* 323 F.3d 236, 250–51 (3d Cir.2003).
>
> Once a sincerely held religious belief has been demonstrated, an inmate may show that a prison regulation or practice violates the right to free exercise of religion by showing that it does not pass the "reasonableness test" set forth in *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and *O'Lone,* 482 U.S. at 349. This test examines the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to valid penological interests. *Thornburgh v. Abbott,* 490 U.S. 401, 415–18, 109 S.Ct. 1874, 104 L.Ed.2d 459; *Turner,* 482 U.S. at 89–91. These standards indicate that "when a prison regulation or practice encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest." *Ramzidden v. Monmouth County Sheriff Dept.,* No. 09–4829, 2010 WL 1752540, at *11 (D.N.J. Apr.30, 2010). However, prison administrators need not choose the least restrictive means possible in trying to further penological interests, *Thornburgh,* 490 U.S. at 411, and it is the burden of the plaintiff to disprove the validity of a prison regulation or practice. *Williams v. Morton,* 343 F.3d 212, 217 (2003) (citing *Overton v. Bazzetta,* 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003)).

To the extent that the Plaintiff argues that the Defendants, in failing to provide him with two Christian feasts, namely at Christmas and Easter, violated his First and Fourteenth Amendment religious beliefs, this claim is unsupported by the record.  As the Defendants' undisputed evidence and statement of material facts show:

> 7.  In the opinion of the RARC, the words "Feast Day" in the Roman Catholic and some Protestant traditions are synonymous with the words "Holy Day."  Holy Days are days which are celebrated in commemoration of the sacred mysteries and events recorded in the history of the Christian faith.  Holy Days are observed by special worship services and often rest from work.  Easter "feast," is therefore, is properly understood as the Easter Holy Day, not a gorging of food.  There are hundreds of "feast" days, i.e. holy days, observed in the Catholic Church.  (Klemm declaration, ¶ 10).

> 8.  The Pennsylvania Department of Corrections accommodates Christian inmates with opportunities to observe holy days such as Easter and Christmas.  In addition, during the Christian season of Lent, Institutions are directed to make provisions for the observances of: a) Ash Wednesday, including imposition of ashes on the forehead, and special worship services for this day; b) Palm Sunday, including the distribution of palm branches or a piece of palm branch to those attending services; c) Holy Thursday special services planned by the Catholic and/or Protestant chaplains; and e) Easter Vigil/Easter special services planned by the Catholic and/or Protestant chaplains (Klemm declaration , ¶ 11).

> 9.  In addition, during the Christian Season of Advent, institutions are directed to make provisions for the observance of : a) Advent week 1, including the lighting of sacramental candles on an Advent wreath; b) Advent week 2, including the lighting of sacramental candles on an Advent wreath; c) Advent week 3, including the lighting of sacramental candles on an Advent wreath; d) Advent week 4, including the lighting of sacramental candles on an Advent wreath; e) Christmas Eve special worship services may be planned by the Catholic and/or Protestant chaplains; and f) Christmas Day Special worship services may be planned by the Catholic and/or Protestant chaplains; and f) Christmas Day Special worship services may be planned by the catholic/and/or Protestant chaplains.  (Klemm declaration, ¶ 12).

(Doc. 39).

14

Moreover, the Plaintiff retained the opportunity to observe his religious beliefs and celebrate Christmas and Easter.  There is no evidence that the Defendants were required to provide "two Christian feasts" as a tenet of the Christian faith.  The undisputed evidence shows that the failure to provide Plaintiff with the requested feasts did not violate his religious beliefs.

Plaintiff provided religious materials to support his Summary Judgment Motion and contention that "two Christian feasts" are required to be provided by PA Department of Corrections to inmates as a requirement of Christianity, one of which is entitled, *Pliny, Letters 10.96-97,* appears to have come from Georgetown University's website.  Plaintiff provided the information without context as to how it helps the assertion of his claim.  (Doc. 33, Attachment P).  The information underlined discusses the partaking of food, but does not provide that a feast is required of Christianity on Christmas and Easter. ( *Id.*).  Plaintiff further provided a document entitled, *The Roman Ritual, Book of Blessings,* which once again, Plaintiff did not provide the context or significance of same for his argument.  (Doc. 33, Attachment N).  The information provided appears to explain the blessings which can be performed at Christmas and Easter meals, but does not provide any information which states that feast meals are required.  In fact, Plaintiff's document explains although it is not an obligation, a special fast **may** be observed as well as the tradition of blessing food for the first meal at Easter.  (*Id.*) (Emphasis added).

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . [ ]." U.S. Const. amend. I.  "Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348

(1987) (citations omitted).  In order to establish a Free Exercise Clause claim, the plaintiff must establish that the defendants' actions contravene his sincere religious beliefs.[8] *Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).

As Defendants pointed out in their brief, Plaintiff's Equal Protection claim is not entirely clear.  (Doc. 41, p. 12).  Plaintiff seems to assert a claim that because he is not allowed to have two celebratory meals for Christmas and Easter, while other inmates of other faiths such as Muslim and Jewish inmates have meals as part of their religious observance, it is a violation of equal protection. In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection violation, the plaintiff must ' . . . demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class.'" *(Citing Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

The elements of a § 1983 equal protection claim require Plaintiffs to state Defendants intended to discriminate against Plaintiff, and later to prove this by either direct or circumstantial evidence.  *See Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229 (1976). *See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000) ("to prevail on a §1983 claim, a plaintiff must prove that the defendant intended to discriminate") (citation omitted).

---

[8] Because Defendants do not dispute the sincerity of Plaintiff's religious beliefs, we will not address this issue.

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination. *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984). It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3) classifications based on social or economic factors. *See, e.g., Britton v. City of Erie*, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister*, 798 F. Supp. 242, 245 (M.D. Pa.), *aff'd.* 972 F.2d 1330 (3d Cir. 1992).

As the Court in *Barnes Foundation v. Township of Lower Merion*, 982 F. Supp. 970, 983 (E.D. Pa. 1997), stated:

> The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

The Court stated in *L. v. Boyertown Area School Dist.*, 2009 WL 466386,*6:

> Plaintiffs do not allege discrimination based on membership in a
> protected class. Thus, in order to prevail on an equal protection claim,
> Plaintiffs must show that Defendants treated B.L. differently than other
> similarly situated individuals, that Defendants did so intentionally, and that
> there was no rational basis for the difference in treatment. *Hill v.*
> *Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir.2006). The Supreme Court
> has held that this standard applies to "class of one" equal protection claims.
> *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145
> L.Ed.2d 1060 (2000).
>
> The Third Circuit agrees that "the Supreme Court's holding in *Olech*
> does not establish a requirement that a plaintiff identify in a
> complaint actual instances where others have been treated differently
> for purposes of equal protection." *Phillips v. County of Allegheny,* 515 F.3d
> 224 (3d Cir.2008) (citing *DeMuria v. Hawkes,* 328 F.3d 704, 707
> (2d Cir.2003). However, this relaxed standard does not enable
> Plaintiffs to circumvent the basic requirements that "a formulaic recitation
> of a cause of action's elements" is not sufficient to survive a motion to
> dismiss and that "[f]actual allegations must be enough to raise a right to
> relief above the speculative level on the assumption that all of the
> complaint's allegations are true." *Bell Atlantic Corp. v. Twombly,* 550 U.S.
> 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted).

Defendants argue that Plaintiff's claim of a right to two(2) celebratory meals per year for
Christmas and Easter is not supported by the First Amendment because Plaintiff has failed to prove
that the requested meals are required or fundamental faith practices of Christianity. (Doc. 41, p. 14).
Under rational basis review, the decision to deny Plaintiff the two (2) feasts per year at Christmas and
Easter should be upheld because there is a clear distinction between other faith groups who have
fundamental tenets involving meals. (*Id.*). We concur with Defendants based on the evidence and
find that Defendants were not under any legal obligation to provide Plaintiff with two (2) celebratory
feasts per year. Plaintiff has failed to submit any evidence to show that he was treated in a manner
by Defendants that had no rational basis.

Therefore, we shall recommend that summary judgment be granted in favor of the Defendants to the extent Plaintiff claims they violated his First Amendment rights by not authorizing two (2) Christian feasts annually, namely, Christmas and Easter.

As discussed above, we find that Plaintiff has alleged he had sincerely held religious beliefs, and that he has sufficiently stated the personal involvement of Defendants with respect to his free exercise of religion claim under the First Amendment and Fourteenth Amendment.  We further find that Plaintiff only shows that he was impeded in his practice of his family traditions and not a requirement of the Catholic religion by Defendants which does not garner constitutional protection.

### 2.  *RLUIPA Claim*

Also, Plaintiff briefly mentions the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in his summary judgment motion.  (Doc. 33, p. 8).  As discussed below, we do not find that Plaintiff establishes a viable claim under the RLUIPA.

In *Branch v. Russian*, 2005 WL 1137879, * 7 (M.D. Pa.), the Court stated:

Individuals have a constitutionally protected right to follow the religious teachings and practices of their choice.  *Employment Div. v. Smith*, 494 U.S. 872, 881-83, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). This right may be limited by law of general applicability, restricting both religious and non-religious conduct, but reasonable accommodations for religious observance may be required in certain circumstances.  *Id.; see also Wisconsin v. Yoder*, 406 U.S. 205, 214-15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).  Particularly in the prison context, where inmates are precluded from engaging in a variety of otherwise permissible activities, officials may be required to provide exemptions from restrictions that place a "substantial burden" on an inmate's adherence to "sincerely held religious beliefs," unless the officials offer compelling reasons

for refusing such accommodation.  *See* 42 U.S.C. § 2000cc-1(a); *see also Smith*, 494 U.S. at 884; *Turner*, 482 U.S. at 89-91.

In *Branch*, the Plaintiff inmate claimed that DC-ADM 807, Hygiene and Grooming Policy, violated his right to free exercise of religion.  This Court found that Plaintiff Branch failed to establish the threshold element of such a claim, since he did not explain how long hair affected his religious beliefs and only alleged that he took a vow requiring him to keep long hair.  Thus, the Court found that plaintiff Branch did not establish a burden on the exercise of his religion.

In *Hennis v. Tedrow*, 2011 WL 1230337, *10 (W.D. Pa. 3-31-11), the Court stated:

> "The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *DeHart v. Horn,* 227 F.3d 47, 51 (3d Cir.2000); *see also Sutton v. Rasheed,* 323 F.3d 236, 250–51 (3d Cir.2003).

As discussed above, we find that Plaintiff has not shown that he had sincerely held religious beliefs, and that Defendants were personally involved in preventing him from practicing any religious beliefs with respect to his free exercise of religion claim under the First Amendment and Fourteenth Amendment.[9]  We find that Plaintiff has not shown Defendants engaged in any conduct which substantially burdened the practice of his religion.  Further, We also find, as thoroughly discussed above, that Defendants accommodate Christian inmates with opportunities to observe holy days such as Easter, Christmas and Advent.  (Doc. 39).

---

[9]  The Court in *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 528 (E.D. Pa. 2002), stated that "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citation, punctuation omitted).

Based on Plaintiff'minimal argument in his Motion for Summary Judgment and his lack of evidence, it is clear that there is insufficient information to support any claim he is asserting under the RLUIPA.  Plaintiff refers to §2000cc in his motion.  (Doc. 33, pp. 4-5,  8.).  As stated, this section "protects land use as religious exercise."  *Id*.  Plaintiff does not prove that any governmental entity imposed a land use regulation on him and placed a substantial burden on his exercise of religion. As Defendants point out Plaintiff does not contend that he is denied the opportunity to observe the religious holidays, instead his contention is that he is not permitted to congregate with other inmates to eat a celebratory meal apart from other inmates and the regular institutional fare.  (Doc. 41, p. 10).  Defendants further argue that Plaintiff never had to choose between his faith and prison policy, therefore, he has not proven that a substantial burden has been placed on his faith. (Id.).  We agree.

We will recommend that summary judgment be granted in favor of Defendants on his RLUIPA claim.

## VI. Recommendation.

Based on the foregoing, we recommend that to the extent Plaintiff asserts a First and Fourteenth Amendment and RLUIPA claim against Defendants, Defendants' Summary Judgment

Motion **(Doc. 38)** be granted.  We also recommend that Plaintiff's Summary Judgment Motion **(Doc.**

**33)** as against Defendants be denied.


                              s/ **Thomas M. Blewitt**
                              **THOMAS M. BLEWITT**
                              **United States Magistrate Judge**

**Dated: February 3, 2012**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEFFREY THOMPSON, | : | CIVIL ACTION NO. **3:CV-11-0340** |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| SHIRLEY MOORE SMEAL, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 3, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

23

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


                              **s/ Thomas M. Blewitt**
_____   **THOMAS M. BLEWITT**
                              **United States Magistrate Judge**

**Dated: February 3, 2012**